# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AUSTIN FIGUEROA,

           Plaintiff,

v.

CAPTAIN VINCENT CAIRA, JR.,

           Defendant.

Case No. 23-CV-1403-JPS

**ORDER**

      Plaintiff Austin Figeroa ("Plaintiff"), a former inmate, filed a pro se complaint under 42 U.S.C. § 1983 alleging that various defendants violated his constitutional rights. ECF No. 1. On December 1, 2023, the Court screened Plaintiff's complaint and allowed it to proceed on an Eighth Amendment violation against Defendant Captain Vincent Caira, Jr. ("Caira" or "Defendant") and Doe defendants for a conditions of confinement claim for Plaintiff's exposure to harmful paint fumes. ECF No. 8 at 4. On September 10, 2024, the Court dismissed the Doe defendants without prejudice for Plaintiff's failure to comply with the Court's order. ECF No. 26.

      Now pending before the Court is Defendant's motion for summary judgment, ECF No. 28, and Plaintiff's fifth motion to appoint counsel, ECF No. 35. The motion for summary judgment is now fully briefed and ready for disposition. ECF Nos. 36, 38. For the reasons described below, the Court will grant Defendant's motion for summary judgment, deny Plaintiff's motion to appoint counsel, and dismiss this case.

1.  **LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

2.  **FACTUAL BACKGROUND**

In compliance with the Court's scheduling order, Defendant submitted a stipulated set of joint facts, ECF No. 30, and a set of disputed facts, ECF No. 31. Plaintiff submitted a response to the joint facts and his own additional proposed facts. ECF No. 37. Plaintiff did not, however, respond to Defendant's additional proposed facts. *See id.* As such, the Court considers these facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2). Defendant filed a response to Plaintiff's

proposed facts.[1] As such, the Court takes the following facts from the parties' statement of undisputed facts, except where explicitly noted.[2]

Plaintiff was an inmate in the custody of the Wisconsin Department of Corrections ("DOC") and had been housed at Racine Correctional Institution ("RCI") since December 21, 2021. Defendant is currently employed by DOC as a Supervising Officer 2 at RCI and was so employed at all times relevant to this lawsuit. Plaintiff has been allowed to proceed on an Eighth Amendment conditions of confinement claim against Defendant based on allegations that Plaintiff was subjected to harmful paint fumes and particles from May 9, 2023 to July 8, 2023 that caused him serious health issues and that Defendant knew of the situation and took no action to limit Plaintiff's exposure.[3] Specifically, Plaintiff alleges that he experienced

---

[1]The Court notes that the parties' disputed facts do not follow the Court's summary judgment protocols regarding factual submissions. *See* ECF No. 15 at 5 ("Each itemized, disputed fact should be supported by each party's separate pinpoint citation(s) to the record."). Although Defendant cites support for his own positions, there are no citations supporting Plaintiff's assertions. *See* ECF No. 31. The Court understands that Plaintiff may not have provided support in the record for his position; however, if that was the case, it should be clearly indicated in future filings. Nonetheless, the Court has carefully reviewed the parties' submissions to determine whether there is support in the record for any disputes. To the extent that there is no support in the record for a purported dispute, the Court has treated these facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

[2]Some of Defendant's citations to the undisputed facts do not appear to be easily found in the record. *See e.g.,* ECF No. 30 at ¶ 23 (referring to Exhibits 1001 and 1003). However, the Court has located much of this information in Plaintiff's previously filed exhibits. *See* ECF No. 14-1. Moreover, the parties have indicated through their filings that these facts are not in dispute. *See* ECF Nos. 30, 37.

[3]The parties' undisputed facts use June 8, 2023 as the end date. ECF No. 30 at 2. Plaintiff's complaint also listed the date as June 8, 2023. ECF No. 1 at 2. Plaintiff's affidavit, however, uses July 8, 2023. ECF No. 14 at 3. The Court takes the facts in the light most favorable to Plaintiff as the non-moving party. This

headaches, blurred vision, nausea, shortness of breath, dizziness, and memory loss. *See also* ECF No. 37 at 2. Plaintiff does not allege that he was subjected to paint fumes outside of RHU.

Plaintiff was housed on Dane Unit from September 7, 2022 to May 22, 2023. Plaintiff was transferred to Waukesha Unit, also known as the Restricted Housing Unit ("RHU"), on May 22, 2023. As of May 22, 2023, Defendant was the Restrictive Housing Captain, meaning he oversees the operations of the RHU. Defendant is responsible for main RHU and program RHU, or Waukesha East and Waukesha West, respectively. Defendant is responsible for contested due process hearings, rounds on the unit, dealing with any issues when they come up with inmates and staff, completing weekly step reviews, and ensuring that the unit is clean and secure.

In September 2022, RCI started doing maintenance on RHU, including repainting. Defendant had both RHU units repainted because there was excessive graffiti and paint chipping in each cell. The goal was to give the unit a fresh look as it had not been painted in about seven years. The painting was completed by inmate workers. There would be anywhere from two to four inmate workers painting on the unit, with a member of the maintenance staff monitoring and directing. The inmate workers worked Monday through Friday, and they never started work before 8:00 a.m. The inmate painters would typically break for lunch around 11:00 a.m. and come back to work from 1:00 p.m. to 3:00 p.m. They would also not work on training days or if staff called in sick or had to complete another task more urgently.

---

timeline makes more sense given the timing of Plaintiff's complaints regarding the paint fumes.

Defendant did not directly oversee the painting. Defendant would go over and check on the work occasionally, but Mr. Hanstad was the one overseeing the workers while they were in RHU painting. Latex based paint was used in the cells and walls throughout the unit. Oil based paint was used for the metal trim on the unit handrails and around doors and for priming the areas around the sink and toilet of the cells. Oil-based paint needed to be used in these areas because latex-based paint can accelerate rust. The latex-based paint that was being used on RHU were labeled "Zero VOC" (volatile organic compounds). VOCs are emitted as gasses that can build up and cause harm to people and the environment. Low VOC paints are those that emit fewer harmful fumes than standard paints.

Early on in the painting process, Defendant was doing rounds and several inmates asked if they could get masks. As such, Defendant routinely brought boxes of N95 masks to the unit and told staff that if anyone complained about the smell, to hand out a mask. After masks were available on the unit, Defendant did not receive any complaints about the painting from any RHU inmates other than Plaintiff and his cellmate.

Plaintiff received a mask while he was housed in RHU.[4] While RHU was being painted, there were two air filtration systems that were running while the workers were painting and/or sanding. They ran from the time the workers came on the unit until the end of their

---

[4] Plaintiff notes that he received his mask only after complaining about his symptoms. ECF No. 37 at 5. Although not referenced in the summary judgment materials, Plaintiff's earlier affidavit provides that he did not receive a mask until June 22, 2023. ECF No. 14 at 4.

workday. Plaintiff maintains the filtration systems were only "sometimes" running. ECF No. 30 at 4. The air filtration systems had to be removed from the unit when the workers were not actively working to ensure that they were not tampered with or broken by inmates on RHU. There were also two floor fans running to help circulate the air. These fans would only be turned off if someone complained they were cold. They would be turned back on as soon as someone asked. The unit windows and external recreation doors were also left open unless someone complained they were cold. Plaintiff never directly asked Captain Caira to open a door or window. Other staff sometimes opened the doors or windows when Plaintiff asked.

On June 9, 2024, Plaintiff wrote a letter to the Deputy Warden, the Security Director, and the head of maintenance complaining about paint fumes in RHU. *See* ECF No. 14 at 5. This correspondence was forwarded to Defendant to respond as the RHU Captain. Defendant responded to Plaintiff on June 15, 2023, by writing, "The paint that is being used is latex paint. We have been painting in RHU for months with no issues. During the painting times we use fans to help take away the odors and smells. The painting will be completed in the next week or so." On June 16, 2023, Plaintiff was sent a letter by Building and Grounds Supervisor Danny Volbrecht after Plaintiff had also sent him a letter complaining about the fumes. Supervisor Volbrecht informed Plaintiff, "We have air purifying machines in the unit. They filter out odors and particulates. The paint for walls is latex paint which is very low VOC's." The painting/renovations on RHU were completed sometime in July 2023.

Plaintiff submitted a Health Service Request ("HSR") on May 28, 2023 about trouble sleeping. The HSR made no mention of headache or

blurred vision. On June 7, 2023, Plaintiff submitted an HSR that stated, "I've been having headaches with blurred vision and upset stunk for a few weeks now." On June 8, 2023, Plaintiff was seen by Nurse Hughes-Richards based on his HSR. Plaintiff reported intermittent headaches with blurred vision and nausea since being housed on Waukesha East. He did not report he was experiencing shortness of breath or dizziness. Plaintiff reported that he did not have a history of headaches or allergies. He stated he had been getting intermittent headaches with blurred vision and nausea almost daily but did not have any symptoms at the time of the appointment. He further reported staying hydrated and denied any physical trauma to the head. He stated that he was not sure if the headaches were from being in the cells stressed or from maintenance sanding and painting. Nurse Hughes-Richards took Plaintiff's vitals, which were all normal. She also completed a thorough physical exam, which was also normal. Nurse Hughes-Richards provided Plaintiff with three days' worth of acetaminophen and ibuprofen to alternate for pain relief. She also advised Plaintiff to apply a cool or warm compress to his forehead or back of his neck, avoid stressors, stay hydrated, and exercise daily as tolerated. She provided Plaintiff with a headache diary to fill in for two weeks and instructed security staff on the unit to provide Plaintiff with a mask. Plaintiff was scheduled for a follow-up visit two weeks later.

On June 22, 2023, Plaintiff was seen by Nurse Hughes-Richards for a follow-up evaluation for headaches causing blurred vision and nausea. Plaintiff denied symptoms that day, but said he had a headache with blurred vision and nausea the day before. Nurse Hughes-Richards issued Plaintiff a mask and was informed by the sergeant on the unit that they had been out of masks until the day prior. Nurse Hughes-Richards also spoke

to the unit sergeant about opening windows and doors during painting, and the sergeant reported the windows and doors are usually opened during that time. Plaintiff has not complained to HSU about headaches, blurred vision, or nausea since June 22, 2023.

**3.     ANALYSIS**

Defendant brings a motion for summary judgment seeking dismissal of the Eighth Amendment claim for unconstitutional conditions of confinement ECF No. 29. Defendant first argues that the undisputed facts show that Plaintiff's exposure to the paint fumes is not sufficiently serious to warrant a constitutional violation. *Id.* at 4. Defendant also argues that the record does not support a finding of deliberate indifference because Defendant took reasonable mitigation efforts. *Id.* at 6. Plaintiff argues that disputed issues of fact preclude summary judgment. ECF No. 36. Plaintiff points to the oil-based paint that was used in certain areas that caused noxious fumes. *Id.* at 2. Plaintiff also points to the disputed fact about how often the air filtration systems were running during the time of the painting. *Id.* at 2–3. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendant's motion for summary judgment and will dismiss this case.

Pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment, the Constitution "imposes duties on prison officials to 'provide humane conditions of confinement.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). An official violates the Eighth Amendment when he fails to uphold this duty and exhibits "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* (quoting *Farmer*, 511 U.S. at 828). The deliberate indifference standard has both an objective and subjective prong. *Id.* Under

the objective prong, "[a] prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter" in that "they den[ied] the inmate 'the minimal civilized measure of life's necessities,' 'creating an excessive risk to the inmate's health and safety.'" *Id.* (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). Under the subjective prong, "the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*

The Constitution does not mandate impeccable housing or "the amenities, conveniences and services of a good hotel." *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (rejecting an Eighth Amendment claim where the plaintiff "was not denied any of his basic human necessities; he just did not receive the level of comfort that he demanded"). "Prison conditions 'may be uncomfortable, even harsh, without being inhumane.'" *See Buchanan v. Pfister*, 2020 WL 902829, at *8 (N.D. Ill. 2020) (quoting *Est. of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017)). The Seventh Circuit has held that a lack of sanitation and ventilation can give rise to a constitutional claim, if the deprivation is sufficiently serious. *See Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (observing that "the minimal civilized measure of life's necessities" includes "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities") (quotation marks omitted); *Davis v. Williams,* 216 F. Supp. 3d 900, 908 (N.D. Ill. 2016) ("The Seventh Circuit has continually espoused a prisoner's right to adequate ventilation.") (collecting cases).

First, the Court finds that Plaintiff has presented enough evidence to meet the objective component of the test. The Court acknowledges,

however, that this conclusion on the objective prong is a close call. On the one hand, being exposed to paint fumes during a routine maintenance project is certainly not, generally speaking, the "type of thing that would inspire a feeling that basic standards of civilization are going down the drain." *See Harris v. County of Cook*, No. 19-CV-4598, 2024 WL 1702678, at *9 (N.D. Ill. Apr. 19, 2024). On the other hand, however, the seriousness of paint fumes and their effect on individuals is likely a fact-intensive inquiry that depends on a number of different factors. Plaintiff maintains here that the conditions were so bad over a period of weeks that he experienced headaches, blurred vision, nausea, shortness of breath, dizziness, and memory loss. Plaintiff also provides that at one point the paint fumes were so intense that he struggled to breathe. ECF No. 14 at 2. Although some of the paint used was latex-based, zero-VOC paint, the record also establishes that oil paint was used in certain areas, and Defendant provides no information about what effects this type of paint may have on a person. *See* ECF No. 34 at 2. Reading the record in the light most favorable to Plaintiff, the Court is satisfied that he has shown enough on the objective prong to survive summary judgment. *See, e.g., Byrd v. Hobart*, 761 F. App'x 621, 624 (7th Cir. 2019) (fact issue existed as to whether alleged pest infestations in a prison kitchen created an unreasonable risk to the inmate's health and safety); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (inmate presented triable issues of fact on his Eighth Amendment claim based on pest infestations and filth). The Court therefore finds that Defendant has not demonstrated that he is entitled to judgement as a matter of law on the ground that Plaintiff's conditions of confinement were not objectively serious. *See Fair v. Pfister*, No. 21 CV 00319, 2024 WL 2959316, at *4 (N.D. Ill. June 12, 2024) ("Astutely, the IDOC Defendants do not assert that [the

inmate's] alleged cell conditions are not objectively serious."); *Ledford v. Baenen*, No. 16-CV-665-JPS, 2019 WL 1412601, at *10 (E.D. Wis. Mar. 28, 2019) ("[A] reasonable jury could find that [the inmate's] exposure to these fumes constituted a sufficiently serious condition of confinement in violation of the Eighth Amendment.").

In this case, the Court's analysis instead turns on whether the record supports a finding that Defendant showed deliberate indifference to those conditions. The Court concludes that it does not. The painting project in question began many months prior to Plaintiff's arrival to RHU. The undisputed facts show that early on in the painting process, Defendant provided N95 masks to inmates and instructed staff to provide masks to anyone complaining about the smell. After masks became available, Defendant did not receive any complaint about the painting from any RHU inmates other than Plaintiff and his cellmate. Plaintiff received a mask to address his issues with the paint fumes. During the painting project, two air filtration systems were running while workers were painting and/or sanding. Although Plaintiff appears to dispute how often the systems were actually running, *see* ECF No. 30 at 7 (Plaintiff agreeing only that the systems were "sometimes" running), nothing in the record indicates that Defendant was ever aware of any issue with the air filtration systems. There were also two floor fans running to help circulate the air; the fans would only be turned off if someone complained they were cold. The unit windows and external recreation doors were also left open unless staff received complaints about the cold. Plaintiff acknowledges that other staff sometimes opened windows or doors when he asked.

Defendant did not directly oversee the painting and would only occasionally go check on the work. Plaintiff arrived at RHU on May 22,

Page 11 of 14

Case 2:23-cv-01403-JPS    Filed 07/29/25    Page 11 of 14    Document 42

2023. Nothing in the record indicates that Defendant was aware of Plaintiff's issue with the paint fumes until he sent a complaint to the Deputy Warden, Security Director, and the head of maintenance. This complaint was forwarded to Defendant for a response. The undisputed facts show that Defendant promptly responded on June 15, 2023. Defendant responded that prison staff had been painting for months with no issues, that the paint used was latex based, that fans are used to take care of the odors and smells, and that the painting would be completed in the next week or so. Plaintiff believes Defendant lied by not including information about the oil-based paint; however, nothing in the record indicates that Defendant knew at the time that some oil-based paint was used. In response to Plaintiff's complaint, perhaps Defendant should have more thoroughly investigated Plaintiff's issue himself to find out more specific information; however, the question before the Court is not whether Defendant acted perfectly in this situation or even if he acted reasonably. Unreasonable conduct on its own does not give rise to liability under the Eighth Amendment. *See Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998) (deliberate indifference "is more than negligence and approaches intentional wrongdoing."). There is simply no evidence in the record that Defendant acted with actual knowledge of the risk of harm to Plaintiff, or that his response to the risk of harm was "so plainly inappropriate" as to permit the inference that he acted with intentional or reckless disregard to Plaintiff's needs. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

In sum, the undisputed facts before the Court do not support a finding that Defendant was deliberately indifferent to Plaintiff's issue with paint fumes. As such, the Court finds that no reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's conditions of

confinement. Thus, the Court will accordingly grant Defendant's motion for summary judgment and dismiss the case with prejudice.[5]

## 4. CONCLUSION

For the reasons explained above, the Court grants Defendant's motion for summary judgment on the merits; no claims or defendants remain, and the Court will therefore dismiss this action with prejudice. Finally, the Court will deny Plaintiff's fifth motion for the appointment of counsel, ECF No. 35, as moot. The Court previously provided a full analysis of its decision to deny Plaintiff's previous motions to appoint counsel, *see* ECF Nos. 18, 20, 26, and Plaintiff's renewed motion did not provide any information to change that prior determination regarding counsel. The Court has carefully reviewed the record and finds that Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 35, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, ECF No. 28, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[5]Defendant also moved for summary judgment based on qualified immunity. ECF No. 29 at 7. Because the Court grants summary judgment on the merits and finds no deliberate indifference based on the undisputed facts, the Court need not reach the question of qualified immunity.

Dated at Milwaukee, Wisconsin, this 29th day of July 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.